IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CLARENCE HARDY, | ) | C/A No. 4:06-1570-HFF-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| TIM RILEY; AND HENRY | ) | |
| McMASTER, ATTORNEY GENERAL | ) | |
| OF THE STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Clarence Hardy ("petitioner/Hardy"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on May 22, 2006. Respondents filed a motion for summary judgment on September 20, 2006, along with supporting memorandum. The undersigned issued an order filed September 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on October 23, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the respondents. Therefore, the undisputed procedural history as set out in respondents' memorandum will be discussed below.

Petitioner is currently incarcerated in Tyger River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court of Spartanburg County. Petitioner was indicted in February 2000 for two counts of pointing and presenting a firearm; assault and battery of a high and aggravated nature; assault of a high and aggravated nature; and discharging a firearm into a dwelling. (PCR App. pp. 205-206; pp. 211-214; pp. 219-222). He was also subsequently indicted, in April 2001, for two counts of burglary, first degree. (PCR App. pp. 215-218). Andy Johnston, Esquire, represented Petitioner on the charges. A jury trial was held April 23, 2001, before the Honorable John Calvin Hayes. (PCR App. p. 1). The jury found Petitioner not guilty on one charge of pointing and presenting, and guilty of all remaining charges. (PCR App. pp. 205-204). The judge sentenced Petitioner to fifteen (15) years imprisonment for each burglary conviction; ten (10) years on each assault; five (5) years for pointing and presenting; and ten (10) years for discharging a firearm into a dwelling, all sentences concurrent. (PCR App. p. 209). Petitioner appealed.

Aileen P. Clare, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, represented Petitioner on appeal. Appellate counsel filed a Final *Anders*[1] Brief of Appellant in the South Carolina Court of Appeals on February 21, 2002, and raised the following issue:

> Was Appellant entitled to a directed verdict of not guilty of discharging a firearm into a dwelling, when he did not fire "at or into" the dwelling?

2

(PCR App. p. 233).

The South Carolina Court of Appeals affirmed the conviction on October 1, 2002, and issued the remittitur on November 1, 2002. Petitioner did not seek certiorari review by the Supreme Court of South Carolina.

On April 17, 2002, prior to the conclusion of the direct appeal, Petitioner filed a *pro se* application for post-conviction relief ("PCR"), in which he raised the following claims:

>   9(a)   Ineffective assistance of counsel;
>
>   9(b)   Failure to secure witnesses;
>
>   9(c)   Failure to secure evidence.

(PCR App. p. 240).

Rodney Richey, Esquire, represented Petitioner in the action. The State made its return on January 13, 2003. (PCR App. pp. 245-49). An evidentiary hearing was held November 13, 2003, before the J. Derham Cole. (PCR App. p. 250). On January 5, 2004, the PCR judge issued an order denying relief. (PCR App. pp. 277-81). Petitioner appealed.

Aileen P. Clare, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, again represented Petitioner on appeal. Appellate counsel filed a *Johnson* Petition for Writ of Certiorari in the Supreme Court of South Carolina on February 25, 2005, and presented the following question for consideration:

> Was trial counsel ineffective for failing to present evidence that petitioner resided at the home he allegedly burglarized?

(*Johnson* Petition, p. 2).

Petitioner filed a *pro se* petition on April 7, 2005, and raised the following additional questions for consideration:

    I.    Was trial counsel ineffective?

    II.    Did the state have jurisdiction to convict and sentence the petitioner for two counts of first-degree burglary?

    III.    Was petitioner vindictively prosecuted?

(*Pro se* petition, p. 3).

The Supreme Court of South Carolina denied the petition on May 3, 2006, and issued the remittitur on May 22, 2006.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, petitioner raised the following challenges to his conviction, quoted verbatim:

    Ground One:    Ineffective Assistance of Trial Counsel: Trial counsel failed to present evidence that the Petitioner lived at the residence to challenge the burglary charges.

    Ground Two:    Lack of Subject Matter Jurisdiction: The P.C.R. evidentiary hearing Judge has find [sic] ample evidence of the Petitioner living at alleged crime scene.

    Ground Three:    Vindictive Prosecution: Prosecutor raised the charges because Petitioner ask for a jury trial.

    Ground Four:    Actual Innocence. I presented additional proof in the form of documents to the P.C.R. court to show that I was a resident at that Residency at the time of the alleged burglary.

(Habeas Petition, pp. 5-6).

### III.  SUMMARY JUDGMENT

On September 20, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment.  As stated, petitioner filed a response in opposition on October 23, 2006.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

5

on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Hardy filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in Green, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of

> established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

See also Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998); Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998). In Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review enunciated in Green, 143 F.3d 865, was erroneous. Thus, to a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review"). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wilson v. Moore, 999 F. Supp. 783 (D.S.C. 1998).

## VI. ARGUMENTS/FINDINGS

In ground one, petitioner alleges counsel was ineffective for failing to present evidence that he was actually a resident of the home he was convicted of burglarizing. (Habeas petition , p. 5).

In their memorandum in support of summary judgment, respondents argue that petitioner failed to show that counsel erred, and but for counsel's error, the result of the proceeding would have been different. Respondents contend petitioner failed to carry his burden of proof and is not entitled to relief where the PCR judge properly applied federal law to the facts well supported by the record.

7

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination .

. . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the trial transcript reveals counsel did call several defense witnesses to present evidence that petitioner had lived at the home and had a relationship with the victim. Sergeant Peace of the Inman Police Department testified that he recalled seeing petitioner "in the roadway in front of the victim's resident some time before the burglaries and assaults. Sergeant Peace testified that several days after the incident, he was searching for petitioner in the building behind the victim's house and saw petitioner run out of the building. (Tr. 126-127). Trial counsel also called a manager of a local department store, James Brooks, who testified that the victim had purchased a bed in October 1999 as "Joyce Hardy." (Tr. 131). Counsel also called the petitioner's niece, Kenyatta Hardy, who testified that petitioner used to stay with victim and she thought they were dating. She also testified that they lived together, she called him on the phone at that house, and she took a big bag of clothes over to him at that address. (Tr. 145-147).

At the PCR hearing, petitioner testified that counsel did not present Inman Police Department or the Spartanburg County Sheriff's Office records showing that officers had previously gone to the victim's property to attempt to locate the petitioner. (Tr. 256). Further, petitioner testified that counsel could have called Tomika Snoddy, the victim's daughter, and/or Anthony Smith, the daughter's boyfriend, to testify that petitioner and victim were a couple in October before the November incidents. (Tr. 261). However, at the PCR hearing, petitioner testified that counsel

9

subpoenaed Ms. Snoddy but advised him that she would testify that he lived out back in this little house which would not have aided his defense. (Tr. 261-262). At the PCR hearing, petitioner testified that he had access to the home, was in a relationship with the victim, and admitted he left the home on November 13, the day before the first incident. Petitioner testified that he only left the house to avoid an argument but that he still lived there because he had a key, had clothes that the house, and had not been evicted. The burglary incidents occurred November 14 and 20, 1999. (Tr. 24, 33, 105, 112).

Trial counsel, Andrew Johnston (Counsel), testified at the PCR hearing. Counsel testified that he was surprised with the burglary verdict. Counsel testified that he thought he had strong evidence that petitioner was living at the house. Counsel testified that he thought he had caught the prosecution in a "dead-on lie, and had brought strong evidence." Further, counsel testified as follows, quoted verbatim:

> She wanted to say that she just knew Mr. Hardy, that she didn't have any kind of romantic relationship with him. And we brought in a guy from a furniture store that had records where she had, they had, bought, I think it was a futon together. And she had signed her name not as Snoddy but as Hardy like she was his wife. And I thought that was darn close to being irreputable [sic] evidence; one that she was lying. Two that they lived together.
>
> The only other evidence that I put up that I can remember is there was an Inman police officer, Sergeant Peace, I believe his name is. And he testified that Mr. Hardy–that he was looking for Mr. Hardy at Ms. Snoddy's residence. And he recalled seeing him there on, I want to say, two different occasions.

(Tr. 268).

10

Counsel also testified that he called Tomika Hardy who testified that she was related to petitioner and had carried food over to Mr. Hardy at Ms. Snoddy's residence and that she believed they lived together.

A review of the PCR transcript reveals the PCR judge concluded the following:

> The allegation that trial counsel was ineffective for failing to adequately present evidence that the Applicant lived at the victim's residence to challenge the burglary is without merit. This Court finds that trial counsel presented ample evidence at trial to show that the Applicant lived at the residence. The Applicant presented additional proof in the form of documents to this Court to show that the Applicant was a resident at the victim's residence at some point prior to the burglary. The Applicant testified that there were also additional witnesses that could have been presented to support his claim that he was a resident. The Applicant did not present these witnesses to this Court to show what additional benefit their testimony would have had. Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995)(A PCR applicant's mere speculation what an alleged beneficial witness' testimony would have been does not satisfy the prejudice prong). Nevertheless, even if Applicant had called these witnesses and the testimony would have been consistent with what the Applicant claims it would be, this Court finds that the testimony would simply have been cumulative. This Court further finds that trial counsel's tactical decision to present evidence that he believed best supported the defense's assertion that the Applicant lived at the victim's resident, was reasonable. The Applicant has not shown that counsel was deficient in that choice of tactics. A defense counsel is not ineffective for making valid trial strategy decisions. Caprood v. State, 338 S.C. 103, 525 S.E.2d 514 (2000). Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below reasonable professional norms.. .
>
> This Court further finds that the Applicant failed to carry his burden to show prejudice from the alleged deficient representation. Since the evidence that trial counsel did present was tactically reasonable and the additional evidence that the Applicant produced for this Court would have simply been cumulative, this Court finds that the Applicant failed to carry his burden to show a reasonable probability that the outcome of the trial would be different. Cherry v. State (The

> failure to present cumulative evidence is not prejudicial). Therefore, the Applicant failed to carry his burden to show prejudice from the alleged deficient representation. <u>Strickland v. Washington</u>. Accordingly, this allegation of ineffective assistance of counsel is denied.

(Tr. 279-281).

The undersigned concludes that the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings. Trial counsel called a relative, a store manager, and a police officer to testify that petitioner lived at the residence. Even assuming, *arguendo,* that petitioner's counsel was found to be ineffective with respect to these issues, petitioner has not shown prejudice. Petitioner did not call any of the witnesses he alleges counsel should have called at trial to testify at the PCR hearing to show what additional benefit their testimony would have had. Therefore, it is recommended that these issues be dismissed and respondents' motion for summary judgment granted.

## **GROUND TWO**

In ground two of petitioner's habeas petition, petitioner alleges trial court lacked subject matter jurisdiction because the PCR judge found there was ample evidence that he lived at the alleged crime scene.

Respondents argue summary judgment should be granted as this issue fails to state a claim upon which relief may be granted.

The undersigned recommends that this issue be dismissed. As this issue pertains to the state court's jurisdiction, this issue should be dismissed because claims arising from state law are not

cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.1998). Therefore, the undersigned recommends that this issue, ground two, be dismissed.

## GROUND THREE

In ground three of the habeas petition, petitioner asserts vindictive prosecution in that the prosecutor raised the charges because petitioner asked for a jury trial. Respondents argue that this claim was not raised at PCR, but was raised in the *pro se* petition for writ of certiorari. Because the claim was not raised below, respondents argue the issue was not preserved for appeal and would not be considered by the appellate court. Therefore, respondents argue the issue is procedurally defaulted.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398. If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits .

. . , our review of questions of law and mixed questions of law and fact is de novo." Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The failure to raise a claim in the first state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petition before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. at 750 (1991). The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. at 490-92.

Thus, a petitioner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be

frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

In Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced . . .

Id. at 910-911 (citations omitted).

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 to 17-27-160. "Exhaustion includes the filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998).

This issue of a vindictive prosecution was not raised on direct appeal or at PCR. The petitioner has not shown any cause and prejudice to overcome the default. Thus, it has not been exhausted in state proceedings. Without cause, the undersigned does not look at prejudice. The petitioner also has not shown "actual innocence" to overcome the default. The undersigned finds that petitioner has failed to make the requisite showing to overcome this default, Coleman v. Thompson,

501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, supra. Therefore, the undersigned recommends that ground three in the habeas petition be dismissed as procedurally barred and respondents' motion for summary judgment granted on this issue.

**GROUND FOUR**

In ground four, petitioner alleges actual innocense and that he presented "additional proof in the form of documents to the PCR court to show that I was a resident at that residency at the time of the alleged burglary."

Respondents argue that the issue fails to state a claim upon which relief may be granted. A freestanding claim of actual innocence is not cognizable in this action.

It is recommended that respondent's motion for summary judgment be granted on this issue. A showing of actual innocence is a gateway allowing review of defaulted claims, not an independent constitutional claims. O'Dell v. Neverland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).

Respondents further argue that if this claim is one to overcome procedural default, the claim would not be credible in light of the facts of record, and specifically in light of petitioner's admission at the PCR hearing that he had left the home prior to either the November 14, or November 20, 1999, incidents. (Tr. 265).

Petitioner argues in his response in opposition that if he were allowed to present probationary files that were presented for the PCR Court's determination, they would show that "Ms. Snoddy was prejured [sic]", that the petitioner did not burglarize his own home, that the State knew that the petitioner resided at the residence, "the State does not refute that evidence, in fact, concedes that I

16

lived there, prior to the day of the incident." (Response, document #24). Petitioner argues that "The petitioner has not refuted the fact that he did cause some alarm after finding two men present in a home that was supposedly his, with his common law wife, and in a threatening manner. A reasonable person under the same circumstances, have exhibited similar behavior. The Petitioner is not attempting to pull the proverbial wool over this Court's eyes, and is not challenging the other convictions obtained in connection with this incident, only the fact, that the petitioner did not, in any way, burglarize his own home." (Response, document #24).

In alleging actual innocence to overcome a procedural default, the petitioner must show that, if new evidence were introduced, it is more likely than not that no jury would convict. Royal v. Taylor, 188 F.3d 239, 243-44 (4th Cir. 1999); United States v. Harris, 183 F.3d 313, 318 (4th Cir. 1999); Satcher v. Pruett, 126 F.3d 561, 570 (4th Cir. 1997); O'Dell, supra. Review is allowed only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

After reviewing the testimony at the PCR hearing, the PCR judge's order in which he stated that he reviewed the additional documents submitted by petitioner, and the arguments set forth by the parties, the undersigned concludes petitioner has not met his burden of proof. Bousley v. United States, 523 U.S. 614, 622-24 (1998). "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Id. At 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The United States Supreme Court held the following in House v. Bell, ____ U.S.____, 126 S.Ct. 2064 ( 2006):

> In *Schlup*, the Court adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "*2077 it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S., at 327, 115 S.Ct. 851. This formulation, Schlup explains, "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." Ibid. (quoting McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims. Yet a petition supported by a convincing *Schlup* gateway showing "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error"; hence, "a review of the merits of the constitutional claims" is justified. 513 U.S. at 317, 115 S.Ct. 851.

Petitioner has failed to show that, if new evidence were introduced, it is more likely than not that no jury would convict. Thus, it is recommended that respondents' motion for summary judgment be granted on this issue.

### VII.  CONCLUSION

Based on the foregoing, it is recommended that respondents' motion for summary judgment (document #21) be GRANTED and petitioner's petition for Writ of Habeas Corpus should be denied, and this Petition dismissed.


                                              Respectfully submitted,

                                              s/Thomas E. Rogers, III
                                              Thomas E. Rogers, III
July 3, 2007                                  United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**